```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

BARBARA GOODMAN, *et al.*,           *

    Plaintiffs,                      *

vs.                                  *

                                         CASE NO. 4:21-CV-15 (CDL)

COLUMBUS REGIONAL HEALTHCARE       *
SYSTEM, INC.,
                                  *

    Defendant.
                                     *

## O R D E R

Plaintiffs were participants in a defined contribution plan sponsored by their employer, Columbus Regional Healthcare System, Inc. Plaintiffs brought this putative class action alleging that Columbus Regional breached its fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), by failing to prudently monitor and control the Plan's investment options, investment expenses, and administrative expenses. Plaintiffs amended their complaint to add Count III, a new prohibited transactions claim under 29 U.S.C. § 1106(a)(1)(C). *See* Am. Compl. ¶¶ 211-34, ECF No. 42. Columbus Regional moved to dismiss Count III. As discussed below, the Court denies the partial motion to dismiss (ECF No. 46).

Also pending before the Court is Plaintiffs' motion to certify a class under Federal Rule of Civil Procedure 23(b)(1). For the

reasons set forth below, the Court grants the motion to certify (ECF No. 52).

## DISCUSSION

**I.   Columbus Regional's Partial Motion to Dismiss (ECF No. 46)**

Columbus Regional asserts that Count III fails to state a claim.  "To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  So, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

A.   <u>Factual Allegations</u>

Plaintiffs were participants in an ERISA defined contribution plan sponsored by their employer, Columbus Regional ("the Plan"). Transamerica Retirement Solutions provided recordkeeping and other services.  Am. Compl. ¶ 13, ECF No. 42.  Merrill Lynch, Pierce,

Fenner & Smith Inc. ("Merrill") provided investment advisory services and other services to the Plan and its participants. *Id.* ¶ 14. Plaintiffs allege that Transamerica and Merrill were parties in interest to the Plan, *id.* ¶¶ 13-14, which imposes certain duties upon Columbus Regional regarding their involvement with the Plan.

In Count III, Plaintiffs allege that Columbus Regional, as the Plan sponsor, caused the Plan to enter contracts with Transamerica and Merrill. According to Plaintiffs, these contracts are prohibited transactions under ERISA because the compensation was unreasonable and because Transamerica and Merrill did not make certain disclosures that are required under the statute and applicable regulations. *Id.* ¶¶ 135-154; 222-232 (alleging that the compensation was unreasonable, that Transamerica and Merrill did not make the required disclosures regarding the compensation, and that Columbus Regional did not receive the required disclosures). The Amended Complaint does not contain specific factual allegations about when the Plan entered the allegedly prohibited transactions.

Columbus Regional initially entered a pension services agreement with Transamerica in 2010.[1] Columbus Regional first entered a defined contribution investment consulting services

---

[1] The 2010 agreement was between Columbus Regional and Diversified Investment Advisors. When Transamerica acquired Diversified, it assumed the agreement.

3

client agreement with Merrill in 2014.  In 2016, the Plan entered new agreements with Merrill and Transamerica that restructured the roles, responsibilities, and compensation of Merrill and Transamerica, resulting in a net increase in service provider compensation.  In their response brief, Plaintiffs clarified that Count III is premised only on the 2016 agreements.  With this clarification, the First Amended Complaint alleges that Columbus Regional caused the Plan to engage in the 2016 transactions with Transamerica and Merrill, and as a result, the Plan paid unreasonable compensation to these two parties in interest using Plan assets, all of which Columbus Regional knew or should have known about.

B.  Analysis

Section 406 of ERISA bars certain transactions between an ERISA plan and a "party in interest," including a transaction that constitutes a direct or indirect "furnishing of goods, services, or facilities between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(C).  The purpose of § 406(a)(1) is to supplement "the fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'"  *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000) (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)).  Exceptions exist; a transaction with a "party in interest" is

allowed if "no more than reasonable compensation is paid" for the services.  29 U.S.C. § 1108(b)(2)(A).  But "no contract for services between a covered plan and a covered service provider, and no extension or renewal of such a contract or arrangement, is reasonable within the meaning of this paragraph" unless certain disclosure requirements are met.  29 U.S.C. § 1108(b)(2)(B)(i).

Here, Columbus Regional contends that Plaintiffs did not adequately allege that Merrill or Transamerica was "a party in interest" because the Amended Complaint does not specifically allege which transactions are challenged.  A "party in interest" is a plan fiduciary or a "person providing services" to the plan.  29 U.S.C. § 1002(14).  As Plaintiffs acknowledge, the *initial* agreement with a service provider cannot give rise to a prohibited transaction claim because "some prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest under § 1106."  *Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021).  To the extent that the Amended Complaint is unclear as to the contested transactions, Plaintiffs' response brief clarifies that they are not challenging the initial agreements between Columbus Regional, Merrill, and Transamerica. Rather, they are challenging two 2016 agreements: the April 2016 Retirement Cash Management Account Agreement ("Merrill 2016 Agreement") between the Plan and Merrill, and a July 2016 Pension Services Agreement between the Plan and Transamerica

5

("Transamerica 2016 Agreement"). According to Plaintiffs, the two 2016 agreements were related, they changed which service provider performed certain services, they resulted in a net increase of service provider compensation, and the compensation was unreasonable.

Columbus Regional does not seriously dispute that Merrill was a "party in interest" when it entered the Merrill 2016 Agreement. Columbus Regional does argue that the Transamerica 2016 Agreement was merely an extension of the 2010 pension services agreement and that the 2016 transaction does not make Transamerica a "party in interest" within the meaning of § 406(a). Columbus Regional did not cite any authority in support of this argument. Rather, the authority Columbus Regional cited explains that an *initial* service agreement does not give rise to a prohibited transaction claim, but it acknowledges that "ERISA is meant to prevent fiduciaries from engaging in transactions with parties with whom they have pre-existing relationships, raising concerns of impropriety." *Ramos*, 1 F.4th at 787; *Albert v. Oshkosh Corp.*, 47 F.4th 570, 585 (7th Cir. 2022) (noting a "circularity problem" with a prohibited transaction claim based on an initial agreement). Moreover, § 408(b)(2)(B) makes it clear that no contract—including an "extension or renewal"—is reasonable unless certain requirements are met. Columbus Regional does not dispute that when the Plan entered the Transamerica 2016 Agreement, it had a preexisting

6

contractual arrangement with Transamerica, which made Transamerica a "party in interest" under § 406.

Columbus Regional argues that as a *factual matter*, Plaintiffs cannot allege any impropriety in the Transamerica 2016 Agreement because that agreement resulted in lower fees paid to Transamerica. Plaintiffs acknowledge that the 2016 agreements reduced the services provided by Transamerica and the fees paid to it, but Plaintiffs assert that the Transamerica 2016 Agreement was part of a transaction that included the Merrill 2016 Agreement and resulted in a net increase in the Plan's fees to its service providers. Plaintiffs clearly allege that the resulting fees were not reasonable. Plaintiffs also allege that the safe harbor requirements of § 408(b)(2) were not met. At this pleading stage, the Court finds that Plaintiffs have adequately alleged that the Transamerica 2016 Agreement was a prohibited transaction.

Turning to the Merrill 2016 Agreement, Plaintiffs allege that the agreement was a prohibited transaction because (1) Merrill was a "party in interest" that had a preexisting relationship with the Plan, (2) the compensation for Merrill's services was unreasonable, and (3) Merrill did not comply with § 408(b)(2)'s disclosure requirements. Again, § 408(b)(2)'s safe harbor only applies if "no more than reasonable compensation is paid" for the service provided by a "party in interest" and if certain disclosure requirements are met. 29 U.S.C. § 1108(b)(2). Columbus Regional

7

appears to contend that the Court should find, as a matter of law, that Columbus Regional complied with § 408's disclosure requirements because some of the information required by the statute and regulations was contained in the Merrill 2016 Agreement itself. The Court is not convinced that the present record (the pleadings and any documents incorporated by reference) contains enough information to decide whether this safe harbor defense applies as a matter of law.[2] And, given Plaintiffs' allegations that the compensation to Merrill under the Merrill 2016 Agreement was unreasonable, the Court finds that Plaintiffs have adequately stated a plausible claim.

For all these reasons, the Court denies Columbus Regional's motion to dismiss Count III.

## II. Plaintiffs' Motion to Certify (ECF No. 52)

Plaintiffs propose that the following class be certified under Federal Rule of Civil Procedure 23(b)(1):

> All persons who were participants or beneficiaries in the Columbus Regional Healthcare System Retirement Savings Plan (the "Plan") and had account balances in the Plan as of February 2, 2015 or after, through the termination of the Plan.

Plaintiffs assert three claims on behalf of the class. First, Plaintiffs claim that Columbus Regional breached its fiduciary

---

[2] In general, the courts have concluded that § 408's exemptions are defenses on which the defendant has the burden of proof. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016) (explaining that the 2d, 4th, 5th, 8th, and 9th Circuits have reached this conclusion).

duty by failing to prudently monitor and control the Plan's investment options, which led to the Plan offering options that were imprudent either because they charged excessive fees, consistently underperformed, or both.  According to Plaintiffs, Columbus Regional's failure to prudently monitor and control the Plan's investment options resulted in losses to the Plan and Plan participants who selected imprudent investment options (or whose funds were placed in them by default) that ought not to have been offered.  Second, Plaintiffs assert that Columbus Regional breached its fiduciary duty by failing to monitor and control the Plan's administrative expenses, which resulted in losses to the Plan and Plan participants because the Plan paid too much of the participants' money for services.  Third, Plaintiffs contend that the Plan entered prohibited transactions under which it paid service providers more than reasonable compensation.

A class action may only be certified if the party seeking class certification satisfies all the requirements specified in Federal Rule of Civil Procedure 23(a) plus at least one of the requirements set forth in Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *accord* Fed. R. Civ. P. 23.  Plaintiffs must also "demonstrate that the class is 'adequately defined and clearly ascertainable.'" *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1039 (11th Cir. 2019) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). Plaintiffs

have the burden to prove that the class certification requirements are met. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

Here, Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(1), which permits a class action if Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements are met *and* if "prosecuting separate actions by or against individual class members would create a risk of" either "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

Columbus Regional acknowledges that certification "could be appropriate in this case for certain classes." Def.'s Resp. to Pl.'s Mot. Class Certification 1, ECF No. 56. Columbus Regional also admits that ERISA actions alleging breach of fiduciary duty are routinely certified under Rule 23(b)(1) because prosecuting separate ERISA actions by individual plan participants who participated in the same defined contribution plan and were subjected to the same alleged breaches of fiduciary duty would

create a risk of inconsistent adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class. Columbus Regional does not appear to dispute that Rule 23(a)'s numerosity and adequacy of representation requirements are met here. Columbus Regional contends, though, that the class proposed by Plaintiffs is so broad that Plaintiffs did not meet their burden to establish standing, commonality, and typicality.

At least one named Plaintiff must have standing on each class claim before the Court may certify a class action. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). To have standing for their ERISA claims, Plan participants and beneficiaries must have suffered a decrease in value of their defined contribution accounts due to a breach of fiduciary duty. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008). Columbus Regional does not dispute that Plaintiffs allege that their account values were negatively affected by its alleged fiduciary improprieties. In fact, the named Plaintiffs assert that their accounts were negatively affected by each of the three types of alleged fiduciary duty breaches by Columbus Regional. The Court is thus satisfied that at least one named Plaintiff has standing to raise each class claim. Moreover, the Complaint alleges that all members of the putative class suffered losses due to the three types of fiduciary duty breaches. Columbus Regional

11

argues, however, that it is possible that some members of the putative class as presently defined did not suffer any loss due to the alleged breaches of fiduciary duties. The Court finds that this is not a standing problem but a liability issue. The possibility that some putative class members may not ultimately make a recovery does not eliminate standing for class certification purposes, particularly given that evidence regarding specific losses caused by the alleged breaches of fiduciary duty should be reasonably ascertainable.

The next question is whether Plaintiffs established commonality and typicality. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). So, there must be common questions of law or fact and common answers to those questions. *Id.* at 352-55 (finding no commonality where the plaintiffs did not point to a single policy of discrimination across hundreds of retail stores that caused the plaintiffs to be denied promotions). And, to satisfy the typicality requirement, "a sufficient nexus" must exist "between the claims of the named representatives and those of the class at large." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (finding no typicality where the class members were not all injured by the same conduct). "A sufficient nexus is

12

established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Checking Account Overdraft Litig.*, No. 20-13367, 2022 WL 472057, at *3 (11th Cir. Feb. 16, 2022) (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Commonality and typicality require "that the named plaintiff and class members have the same interest and suffer the 'same injury,' but the class representative need not have suffered "injury at the same place and on the same day as the class members." *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1047 (11th Cir. 2020) (quoting *Prado*, 221 F.3d at 1279)).

Columbus Regional does not dispute that there are common issues of law and fact for the imprudent investment claims, the excessive fee claims, and the prohibited transaction claims. Columbus Regional also does not dispute that certification might be appropriate for certain subclasses. In a nutshell, Columbus Regional suggests that there must be a separate subclass for each allegedly imprudent investment and that the named Plaintiffs cannot establish typicality for allegedly imprudent investment options in which they did not invest. The Court is not convinced that this level of granularity is required at the class certification stage, particularly given Plaintiffs' allegation that Columbus Regional employed flawed selection and monitoring

13

practices; these claims are the same for participants and beneficiaries across the Plan's investment options. For the imprudent investment claims, the same theory applies—that the plaintiffs were injured by Columbus Regional's alleged breach of its fiduciary duty under ERISA in managing the Plan's investment options. Similarly, the excessive fee and prohibited transaction claims are based on Columbus Regional's alleged failure to insist that the service providers charged no more than reasonable fees, which resulted in harm to Plan participants who funded excessive fees to service providers when they invested in revenue-sharing investments. Thus, the alleged cause of the injury remains the same across all funds.

For Count One, the common question, capable of class-wide resolution for which the named Plaintiffs' claims are typical of the class, is whether Columbus Regional breached its fiduciary duty under ERISA in managing the Plan's investment options such that it offered allegedly imprudent investments. For Counts Two and Three, the common question, capable of class-wide resolution for which the named Plaintiffs' claims are typical of the class, is whether Columbus Regional breached its fiduciary duty by allowing its service providers to collect unreasonable fees for certain services, which were funded by revenue-sharing investments. The remaining issues—whether a particular class member invested in an imprudent or excessive fee investment and

14

suffered losses as a result—should be readily ascertainable from the Plan's records. *Cf. Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1369 (11th Cir. 2021) (explaining that "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination") (quoting *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021)).

The Court acknowledges that there may be factual differences between the individual funds offered by the Plan and that Columbus Regional's alleged breaches of its fiduciary duties may have resulted in higher losses to some Plan participants compared to others. These differences relate to degree of injury and level of recovery. At this point, the Court does not see the benefit of dividing the proposed class into subclasses by investment option.[3] If manageability becomes an issue down the road, the Court may consider dividing the class into subclasses.

For the reasons set forth above, the Court finds that Plaintiffs have met their burden of establishing that the following class should be certified under Federal Rule of Civil Procedure 23(b)(1):

> All persons who were participants or beneficiaries in the Columbus Regional Healthcare System Retirement Savings Plan (the "Plan") and had account balances in

---

[3] This is not to say that district courts confronted with similar (albeit slightly different) claims were wrong when they decided to approve separate subclasses for each allegedly imprudent mutual fund. The Court simply finds, in its discretion, that it need not require such subclasses under the precise circumstances presented in this action.

15

the Plan as of February 2, 2015 or after, through the termination of the Plan.

CONCLUSION

As discussed above, the Court denies Columbus Regional's partial motion to dismiss (ECF No. 46) and grants Plaintiffs' motion to certify class (ECF No. 52).

IT IS SO ORDERED, this 2nd day of August, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
