**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| BARBARA GOODMAN, LISA COUNTRYMAN, SHARON CLARKE, CHERYL GALLOPS, SHERRI STUCKEY, and LAUREN SPIVEY, *Individually and on behalf of all others similarly situated,* | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 4:21-cv-00015-CDL |
| v. | ) ) | |
| COLUMBUS REGIONAL HEALTHCARE SYSTEM, INC., | ) ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING JOINT MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND GRANTING UNOPPOSED MOTION FOR
ATTORNEYS' FEES AND EXPENSES**

The Court previously issued an order preliminarily approving the parties' proposed settlement of this class action, and the Court set a fairness hearing.  Order (Feb. 1, 2024), ECF No. 67.  The class members were notified of the proposed settlement and the fairness hearing.  Baldwin Decl. ¶¶ 9-11, ECF No. 68-3.  Presently pending before the Court are the Parties' Joint Motion For Final Approval Of Class Action Settlement (ECF No. 68) and Plaintiffs' Unopposed Motion for Attorneys' Fees and Service Awards (ECF No. 69).  The Court reviewed the motions and supporting materials, and the Court held a fairness hearing on June 12, 2024.  The motions are granted to the extent set forth below.

## Background

As described in orders previously entered by the Court, Plaintiffs were participants in a defined contribution plan (the "Plan") sponsored by their employer, Defendant Columbus Regional Healthcare System, Inc. ("Columbus Regional"). *See* Order (Jan. 25, 2022), ECF No. 23. Plaintiffs brought this action alleging, among other claims, that Columbus Regional breached its fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA") by failing to prudently monitor and control the Plan's investment options, investment expenses and administrative expenses.

Columbus Regional moved to dismiss the Complaint in its entirety. Plaintiffs then withdrew counts III and IV of the Complaint and the Court dismissed those counts, but denied the motion to dismiss as to Counts I and II, leaving the claims described above. *See* Order (Jan. 25, 2022), ECF No. 23. Plaintiffs amended their Complaint to add a prohibited transaction claim under 29 U.S.C. § 1106(a)(1)(C). *See* Am. Compl., ECF No. 42. Columbus moved to dismiss the prohibited transaction claim, which the Court denied. Order (Aug. 2, 2023), ECF No. 58.

Plaintiffs moved to certify the following Class:

> All persons who were participants or beneficiaries in the Columbus Regional Healthcare System Retirement Savings Plan (the "Plan") and had account balances in the Plan as of February 2, 2015 or after, through the termination of the Plan.

Pls.' Mot. to Certify, ECF No. 52. Columbus Regional contested Plaintiffs' class definition. The Court granted Plaintiffs' motion and certified the Class. Order (Aug. 2, 2023), ECF No. 58.

In discovery, the Parties collectively produced some 55,000 pages of documents and obtained additional documents from multiple non-parties, including the Plan's recordkeeper, Transamerica Retirement Solutions, and the Plan's financial advisor, Merrill Lynch.  *See* Joint Mot. for Preliminary Approval Ex. A, Joint Statement of Proposed Settlement 3 ¶ I, ECF No. 66-2.  The Parties took multiple depositions: three Columbus Regional Investment Committee Members, four of six Class Representatives, and non-parties Merrill Lynch  and Transamerica.  *See id.*  The Parties each engaged experts, three for Plaintiffs and two for Columbus Regional, who exchanged written reports.  *See id.*

On September 18, 2023, the Parties engaged in mediation, ultimately agreeing in principle to settle the case.  The Parties filed a Joint Statement of Proposed Settlement, ECF No. 66-2, and moved the Court for an order preliminarily approving the Settlement.  The Court granted the motion.  Order (Feb. 1, 2024), ECF No. 67.

### Settlement Administration

Following entry of the Court's preliminary approval order, Class Counsel engaged RG/2 Class Administration, LLC ("RG/2") as the Settlement Administrator.  As set out in the Declaration of Melissa Baldwin, RG/2's Director of Claims Administration, RG/2 compiled and analyzed data respecting the Plan participants provided by the recordkeepers and counsel.  Based on that data, RG/2 identified 6,789 potential class members.  Baldwin Decl. ¶ 8.

RG/2 updated the potential class members' names and addresses through  the United States Postal Service National Change of Address Database and mailed the

Short-Form Notice approved by the Court to each. *Id.* ¶ 9. The USPS returned 156 of the notices as undeliverable. *Id.* ¶ 10. Using standard skip-tracing procedures, RG/2 obtained addresses for most of those and mailed new notices to them. *Id.*

The Short-Form Notice notified Class Members of their right to object to the settlement. *Id.* ¶ 11 & Ex. B. The Short Form Notice also identified a website maintained by RG/2 where more detailed information was available and specified the process for objecting to the Settlement. Neither RG/2 nor Class Counsel received any objection to the Settlement from any potential class member. *Id.* ¶ 11. Additionally, pursuant to the Class Action Fairness Act, RG/2 caused a Notice of Proposed Settlement of this matter to be served by First Class mail upon the United States Attorney General and fifty-one Attorneys General of the States and the District of Columbia. *Id.* ¶ 4. RG/2 received no objections or other responses from any Attorney General. *Id.*

RG/2 identified those Plan participants who qualify as Class Members by virtue of having had a positive balance in their retirement account in the Plan as of the end of any quarter during the class period from February 2, 2015 through termination of the Plan in 2019. Using Plan participants' quarter-end account balance data, RG/2 identified 6,771 unique account holders having positive balances, i.e., the Class Members. Under the proposed Plan of Allocation, each Class Member will receive a distribution of at least Ten Dollars ($10.00). Class Members will receive an additional amount representing each person's pro rata share of the remaining available net settlement proceeds calculated based on participants' average quarter-

end account balance over the Class Period.  Upon final approval of the Settlement and the Plan of Allocation, RG/2 will mail a check to each Class Member.

RG/2 estimates that five percent (5%)  of the checks will not be negotiated. Under the proposed Plan of Allocation, RG/2 will establish a *cy pres* fund account, into which it will transfer any residual resulting from unnegotiated checks.  The parties propose a *cy pres* fund to be donated to the Piedmont Columbus Regional Foundation, a 501(c)(3) charity that supports medical facilities and medical education in the Columbus, Georgia area.

Following entry of the Court's preliminary approval Order, the Parties selected an independent fiduciary, Fiduciary Counselors, Inc. ("FCI"), to review the Settlement.  Specifically, FCI was charged with (i) determining whether to approve and authorize the Settlement on behalf of the Plan and (ii) determining whether the Settlement satisfies the requirements of Department of Labor Prohibited Transaction Exemption 2003-39, as amended.  *See* Class Exemption for the Release of Claims and Extension of Credit in Connection With Litigation, 68 Fed. Reg. 75632-01 (Dec. 31, 2003).  FCI submitted a report to the Court stating that it approved and authorized the settlement on behalf of the Plan, including the proposed award of attorney's fees and expenses to Class Counsel and the proposed service awards to the Class Representatives.  FCI Report §§ II, V, ECF No. 71-1.

### Final Approval of the Class Settlement

Settlement of a certified class action requires judicial approval.  Fed. R. Civ. P. 23(e).  To grant final approval of a proposed settlement, the district court must find

the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).  Here, the
parties' proposed settlement contemplates a total common fund of $2 million, from
which the following items will be deducted: (a) settlement administration fees of
$55,000, (b) Class Counsel attorneys' fees of $666,666.66, and (c) Class Counsel's
expenses of $175,315.29.    Thus, the settlement contemplates distribution of
$1,103,018.05 to Class Members under the Plan of Allocation.  To determine whether
this proposal is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented
> the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the
> costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed
> method of distributing relief to the class, including the method of processing
> class-member claims; (iii) the terms of any proposed award of attorney's fees,
> including timing of payment; and (iv) any agreement required to be identified
> under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23 (e)(2).  In evaluating these "four core concerns," the Court may
consider "(1) the likelihood of success at trial; (2) the range of possible recovery; (3)
the point on or below the range of possible recovery at which a settlement is fair,
adequate and reasonable; (4) the complexity, expense and duration of litigation; (5)
the substance and amount of opposition to the settlement; and (6) the stage of

proceedings at which the settlement was achieved." *Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). In addition to the "four core concerns," a district court must also determine that the settlement is not the product of collusion between the parties. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021).

For the following reasons, the Court finds that final approval of the proposed Settlement is warranted because the proposed settlement satisfies the four "core concerns" of Rule 23(e)(2) and is not the product of collusion. The Court's findings are based on the Court's review of the Joint Statement of Proposed Settlement (ECF No. 66-2), the Court's review of the motion for final approval of class settlement (ECF No. 68), and the fairness hearing held on June 12, 2024.

The Court finds that the first core concern of Rule 23(e)(2) – whether the Class Representatives and Class Counsel adequately represented the Class – is satisfied. The Class Representatives have claims that are typical of the Class Claims, and their claims are not antagonistic to those of other Class Members. Class Counsel investigated the facts and claims, prepared the complaint, responded to two motions to dismiss, briefed the motion for class certification, conducted extensive discovery, and represented Plaintiffs during mediation.

The second core concern of Rule 23(e)(2) – whether the proposed settlement was negotiated at arms' length – is satisfied. Before the Parties agreed to mediation, this case was vigorously litigated for two and a half years, including motions to dismiss, extensive document productions, numerous depositions, and the exchange of

expert reports. The mediation was conducted by an experienced trial lawyer and mediator. At the mediation, the Class was represented by three lawyers with extensive experience in federal class action litigation, including ERISA excessive fee litigation, and other complex litigation. Columbus Regional was represented by three partners from a large firm having substantial experience in ERISA and class action litigation. Also present for Columbus Regional were in-house counsel, two insurance company representatives, and coverage counsel. Following a full day of mediation, the Parties agreed to a total settlement amount of $2,000,000, from which settlement administration fees and Class Counsel's fees and expenses will be paid. After the mediation, counsel for the parties continued negotiating for several weeks to finalize the terms of the settlement agreement. The Court concludes that this process reflects an arms' length negotiation that is not the product of collusion.

The third core concern of Rule 23(e)(2) – whether the relief is adequate – is also satisfied. In addressing this issue, the Court is to take into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2). In evaluating this core concern, the Court may also consider several "*Bennett* factors," including the likelihood of success at trial, the range of possible recovery, the complexity, expense and duration of litigation, and the stage of proceedings at which the settlement was achieved. *Ponzio*, 87 F.4th at 495.

Regarding the costs and risks, the likelihood of success, the potential range of recovery, and the posture of this litigation, the Court notes that this action was filed in February 2021. The parties litigated two motions to dismiss and a motion for class certification. The parties diligently pursued fact discovery, including extensive document production and nine fact depositions. The parties did not schedule a mediation until after they produced their initial written expert reports, which revealed Plaintiffs' experts' opinion that the Plan's losses were in the range of $7.5 Million to $8.4 Million and Defendant's experts' opinion that Defendant had no liability and that the Plan's losses were zero. To advance the litigation further, the parties would have undertaken significant additional costs: they represent that they would have had to take five expert depositions. Then they likely would have litigated *Daubert* motions and summary judgment motions and, ultimately, a trial – all with an uncertain result, particularly given the complexity of the claims and the arguments. Plaintiffs were not guaranteed to achieve a recovery equal to their alleged losses—the range of possible recovery was anywhere between zero (if the jury was convinced by Defendant's evidence) and several million dollars plus reasonable attorney's fees and costs under ERISA's fee-shifting provision (if the jury was convinced by Plaintiffs' evidence).

Regarding the proposed method of distributing relief to the class (i.e., the Plan of Allocation), including the method of processing class-member claims, the Court finds that the proposed method is effective. The Settlement Administrator delivered notice to all but a small percentage of Class Members who could not be located. No

action is required on the part of Class Members to receive a settlement payment—

the Settlement Administrator will simply mail a check to every Class Member who

can be located.  Each Class Member will receive at least a $10 minimum settlement

payment, and after the minimum distribution is made, each Class Member will

receive an additional amount representing the Class Member's pro rata share of the

net settlement proceeds (based on the average quarter-end account balance over the

Class Period).    This method provides non-negligible consideration to all Class

Members, who are releasing their claims in connection with the Settlement.  It treats

Class Members equitably because each will receive a pro-rata distribution based on

their account balances.  The Court finds this approach is efficient and rational.

Regarding the terms of the proposed attorneys' fee award, Class Counsel

requests an award of attorney's fees in the amount of one-third of the $2 million gross

recovery, plus reimbursement of expenses.  Class Counsel recognizes that the Court

has discretion to determine what amount of fees and expenses is reasonable.  As

discussed in more detail below, the Court finds that it is reasonable to award fees in

the amount of $666,666.66 and expenses in the amount of 175,315.29.

In sum, the Court finds that the amount of the net settlement that will be

distributed to class members—$2 million, less administration fees of $55,000, Class

Counsel attorneys' fees of $666,666.66, and Class Counsel expenses of $175,315.29—

is adequate, taking into account the costs and risks of continuing the litigation, the

effectiveness of the proposed method of distributing relief to the class, the likelihood

of success at trial, the range of possible recovery, and the complexity, expense, and duration of the litigation.

The fourth core concern of Rule 23(e)(2) is whether the proposed settlement treats the Class Member equitably relative to each other.  In evaluating this core concern, the Court may consider "the point on or below the range of possible recovery at which settlement is fair, adequate, and reasonable" and "the substance and amount of opposition to the settlement." *Ponzio*, 87 F.4th at 494-95 (quoting *Bennett*, 737 F.2d at 986).  Again, given the complexity of the legal issues and the fact disputes regarding Plaintiffs' alleged losses, the range of possible recovery was anywhere between zero and several million dollars, and a settlement amount of $2 million (less administration fees and attorneys' fees and expenses) is not below the range of reasonableness.  Under the Plan of Allocation, all Class Members will receive a minimum settlement payment of $10, plus the Class Member's "Pro-Rata Share Allocation."  Proposed Plan of Allocation 3 § I.A, ECF No. 68-2.  Such an allocation, which is based on each Class Member's account size, is equitable.  There has been no objection to the proposed settlement.

In summary, the Court thus finds that each core concern of Rule 23(e)(2) (informed by the *Bennett* factors) is satisfied.  Accordingly, the Court grants the Parties' Joint Motion for Final Approval of the Class Settlement (ECF No. 68).

The Court will retain jurisdiction to enforce the Settlement.  The Settlement Administrator is authorized to determine the amounts of the settlement payments to each Class Member to be made in accordance with the Plan of Allocation approved by

the Court.  Within ten (10) days following the issuance of all settlement checks, the

Settlement Administrator  shall prepare and provide to all counsel of record a list of

the persons receiving settlement checks and the amount of each.

## Attorneys' Fees and Expenses

Class Counsel seeks an attorneys' fee award of one-third of the gross

settlement amount of Two Million Dollars, i.e., a fee award of $666,666.66, and

litigation costs and expenses of $175,315.79.  Under Rule 23(h), the Court "may award

reasonable attorney's fees and nontaxable costs that are authorized by law or by the

parties' agreement."[1]  In "common fund" cases like this one, the Eleventh Circuit

instructs that an attorneys' fee award "shall be based upon a reasonable percentage

of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v.*

*Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (contrasting the common fund percentage

approach to the lodestar method "for determining statutory fee-shifting awards").

"There is no hard and fast rule mandating a certain percentage of a common fund

which may be awarded as a fee because the amount of any fee must be determined

upon the facts of each case." *Id*. at 774. As a general proposition, "the majority of

common fund fee awards fall between 20% to 30% of the fund," although "an upper

limit of 50% of the fund may be stated as a general rule," and some courts have viewed

---

[1] Any motion for fees and costs must be filed following the procedures of Rule 54(d), and notice of the motion must be "directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1)..  Class Counsel's motion complies with these rules because the motion specifies the grounds for the award and states the amount sought; the notice mailed to Class Members states that an application for attorneys' fees is would be filed and taken up at the fairness hearing on June 12, 2024; and there is more detailed information on the website created by the Settlement Administration to inform Class Members about the terms of the settlement.  There was no objection to the amount of fees and expenses sought by Class Counsel.

25% "as a 'bench mark' percentage fee which may be adjusted in accordance with the individual circumstances of each case." *Id.* at 774–75. "The factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary." *Id.* at 775. The Eleventh Circuit has endorsed using the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, as well as "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Id.* (citing *Johnson, .,* 488 F.2d 714 (5th Cir. 1974)). The twelve *Johnson* factors are:

    (1) the time and labor required;
    (2) the novelty and difficulty of the questions involved;
    (3) the skill requisite to perform the legal service properly;
    (4) the preclusion of other employment by the attorney due to acceptance
    of the case;
    (5) the customary fee;
    (6) whether the fee is fixed or contingent;
    (7) time limitations imposed by the client or the circumstances;
    (8) the amount involved and the results obtained;
    (9) the experience, reputation, and ability of the attorneys;
    (10) the "undesirability" of the case;
    (11) the nature and the length of the professional relationship with the
    client;
    (12) awards in similar cases.

*See Johnson*, 488 F.2d at 717-19.

Here, the *Johnson* factors of particular importance are: (i) Class Counsel worked more than two thousand hours on this case, and advanced $175,315.29 to pay litigation expenses; (ii) ERISA excessive fee class action litigation is novel, complex and specialized, requiring skilled attorneys to successfully prosecute; (iii) Class

Counsel accepted the case on a contingency; thus the hours and dollars spent were at risk; (iv) the requested fee is consistent with fees awards in other ERISA class action cases in this Circuit; and (v) the result obtained compares favorably to similar cases, especially in light of the size of the Plan and the shortened class period, approximately four years versus the usual six.  Accordingly, the Court awards Class Counsel attorneys' fees of one-third the total settlement amount, *i.e.*, $666,666.66, and expenses in the amount of $175,315.29.

## Cy Pres Fund

As discussed above, the settlement administrator estimates that five percent (5%)  of the settlement checks will not be negotiated.   The Court approves establishment of a *cy pres* fund account, into which the settlement administrator will transfer any residual resulting from unnegotiated checks, so long as the unclaimed funds do not exceed $75,000.  The *cy pres* fund shall be donated to the Piedmont Columbus Regional Foundation, a 501(c)(3) charity that supports medical facilities and medical education in the Columbus, Georgia area.  If the unclaimed settlement funds exceed $75,000, then the parties must seek new approval of a *cy pres* award; any such motion for approval shall explain to the Court why a distribution of unclaimed funds to Class Members is not feasible or practicable.

## Service Awards

Class Counsel suggests service awards to the Class Representatives in recognition of their respective efforts, in the amounts of $10,000 each to Ms. Goodman and Ms. Countryman, and $5,000 each to Ms. Clarke, Ms. Gallops, Ms. Stuckey and Ms. Spivey.   Class Counsel argues that the Class Representatives actively

14

participated in the case, spent time having their depositions taken, and perceived

that there might have been a risk to their employment in challenging the practices of

the retirement plan they participated in before their employer was acquired by

another entity and the plan was terminated. But the Eleventh Circuit has held that

an incentive award which "compensates a class representative for his time and

rewards him for bringing a lawsuit" is prohibited. *Johnson v. NPAS Sols., LLC*, 975

F.3d 1244, 1260 (11th Cir. 2020). Although Class Counsel argues that *Johnson* does

not apply here, Class Counsel did not meaningfully distinguish *Johnson* or establish

that the requested service award—which seeks to compensate the Class

Representatives for their time and for bringing this action—is permitted under

binding precedent. The Court thus declines to make service awards to the Class

Representatives.

**CONCLUSION**

For the reasons set forth above, the Court approves the settlement of this

action, with a total settlement amount of $2 million that shall be allocated as follows:

(a) $1,103,018.05 to Class Members under the Plan of Allocation, (b) settlement

administration fees of $55,000, (c) Class Counsel attorneys' fees of $666,666.66, and

(d) Class Counsel's expenses of $175,315.29 The Court further approves

establishment of a *cy pres* fund for unclaimed settlement funds, provided that the

unclaimed funds do not exceed $75,000.

SO ORDERED, this 12th day of June, 2024.

S/Clay D. Land
Hon. Clay D. Land
Judge, United States District Court
for the Middle District of Georgia